E-FILED
Tuesday, 27 December, 2011  11:29:34 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL LEWIS et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 10-CV-3163 |
| | ) | |
| LARRY PHILLIPS et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

There are 17 plaintiffs in this case, all detained in the Rushville

Treatment and Detention Center pursuant to the Illinois Sexually

Violent Persons Act.  They pursue First Amendment claims challenging a

blanket ban on R-rated movies and M-rated video games.  This case was

stayed while the same claim in another case was decided.  Smego v.

Payne, 09-CV-3244 (C.D. Ill., Judge Baker).  In that case, Judge Baker

upheld the constitutionality of the blanket ban.  Judge Baker then lifted

the stay in this case, noting that:

1

> While the plaintiffs [in this case] were not parties to [Smego v. Payne], the same legal principles will apply in this case. In *Smego* the court acknowledged that a blanket ban did exist, but upheld that ban based on the defendants' legitimate interests in running the facility and rehabilitating the residents. The same conclusion appears to be inevitable in this case. The plaintiffs, however, will be given an opportunity at discovery, since they were not parties to the prior suit.

A retaliation claim is also proceeding in this case, per Judge Baker's order of June 17, 2011. Discovery is set to close in this case on January 31, 2012.

Before the Court are Plaintiffs' two motions to compel. Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence.

Some of Plaintiffs' requests probe the reasoning behind the movie and game bans. Defendants contend that Judge Baker's order in Smego establishes, as a matter of law, that the blanket ban is constitutional.

Defendants thus contend that any discovery requests about the ban are irrelevant.

Judge Baker's concerns about res judicata do not apply to his conclusion that the blanket ban is reasonably related to legitimate interests in "rehabilitation, efficiency, and limiting costs." (Smego, 09-3244, 6/9/11 order, p. 4). That was a conclusion of law, with which this Court agrees. That conclusion need not be revisited each time a plaintiff challenges the blanket ban: Defendants' proffered explanation for the ban is not going to change.

For example, the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979), addressed a pretrial detainees' challenge to a rule limiting the purchase of hardcover books to books mailed directly from publishers, book clubs, or book stores. The Supreme Court concluded, on a fully developed factual record, that the rule was "a rational response by prison officials to an obvious security problem." 441 U.S. at 551. That is a holding of law, which later plaintiffs cannot relitigate, even though they were not parties to the Bell lawsuit. See Lindell v. Frank, 377 F.3d 655,

659 (7th Cir. 2004)("There is no question that 'publishers only' rules that restrict prisoners from receiving hardcover books from any noncommercial sources are reasonably related to a prison's interest in preventing contraband from being smuggled into the prison.").  Likewise, Judge Baker's conclusion that Defendants' ban on R-rated movies and MA-rated games is rationally related to legitimate government interests is a conclusion of law.

However, later litigants can always try to distinguish their facts from a prior case's holding by demonstrating that their facts or circumstances are different.  *See* <u>Jackson v. Elrod</u>, 655 F.Supp. 1130, 1137-38 (N.D. Ill. 1987)(pretrial detainee stated claim where rule against books was much broader than publishers-only rule in <u>Bell</u>).  Additionally, in appropriate circumstances plaintiffs in later cases may argue for reconsideration of a court's prior holdings.

Distinguishing the facts of this case from <u>Smego</u> seems a quixotic endeavor since the exact same blanket ban appears to be at issue here. However, Plaintiffs should be given an opportunity to address this issue

4

and argue other legal theories challenging the ban that were not addressed by Judge Baker.  Judge Baker already promised them this opportunity when he denied their motion to reconsider.  (7/11/11 text order: "The plaintiffs may make all their legal arguments about the constitutionality of the ban at the summary judgment stage, including those made in the motion for reconsideration.").

Additionally, some of Plaintiffs' discovery requests seem aimed not at the blanket ban, but instead at the policy that has apparently replaced the blanket ban: a list of banned movies and games.  Plaintiffs may be trying shifting their focus from the blanket ban to the banned list, though they have not moved to file a supplemental or amended complaint. However, the "banned list" issue seems closely enough related to the blanket ban that both should be addressed in this case.  In short, the Court cannot rule definitively at this point that <u>Smego</u> renders irrelevant all of Plaintiffs' discovery questions about the movie and game restrictions.  With that in mind, the Court will address Plaintiffs' motions to compel.

5

I.    **Motion to Compel Responses from Defendants Wilczynski, Oberhausen, Olt, and Groot.**

A.  Interrogatory 2:[1]  Identify ethics organizations governing your line of work and the dates during which you were in good standing with those organizations.

Plaintiffs contend that unethical conduct is "at the heart of this case," but the Court agrees with Defendants that this request is irrelevant and not reasonably calculated to lead to relevant evidence.  In any event, Defendants have identified that their profession is regulated by the Illinois Department of Professional Regulation.

B.  Interrogatory 3: Justify your reliance on internet movie and game reviews by teens and pre-teens to determine whether to allow certain movies and games.

This interrogatory is apparently based on a staff response to a resident request asking what sources were consulted to determine a game's sexual content.  The staff response identified commonsensemedia.org (which includes teen reviews), whattheyplay.com, and "you tube."

Defendants object on grounds of vagueness and irrelevancy.

---

[1]The discovery requests are paraphrased.

Defendants further contend that they collect information from many different sources to make their determinations.  The Court finds this answer responsive.  Plaintiffs' interrogatory is essentially an argument that Defendants are not appropriately exercising their professional judgment by relying on teen internet reviews.  Interrogatories are not the place to argue the case.

C.  Interrogatory 4: Identify the sources upon which you rely to create the "banned list."

Defendants adopted a prior response that "the Executive Management Team and Leaders collect information from many different places and in connection with their collective education, training and experience of the group make various informed decisions."  Defendants also object on grounds of vagueness and irrelevancy.

As discussed above, Plaintiffs seem to be changing their focus to the "banned list," which has replaced the blanket ban.  The Court believes the banned list should be addressed by Defendants at summary judgment.  Accordingly, Defendants are directed to list, to the extent possible, the external sources on which they rely to determine whether a

7

movie or game will be placed on the "banned" list.  Defendants appear to

have already identified three of those sources as discussed above.

D.  Interrogatory 5: Identify the "personal property contracts" used
for residents possessing DVD players and gaming systems.

The Court agrees with Defendants that this question is irrelevant.

Plaintiff do not adequately explain what the personal property contracts

have to do with the restrictions on movies and games.

E.  Interrogatory 6: Identify the counseling given to residents
regarding harmful stimuli in R-rated movies and MA-rated games.
Identify the individual testing and evaluation that occurs in determining
if exposure to this stimuli is contraindicated for a particular resident.

The Court does not see the relevance of instructions on harmful

stimuli and agrees with Defendants that Judge Baker has already

determined in <u>Smego</u> that Defendants are not required to conduct an

individual evaluation of a resident before implementing restrictions on

games and videos.  Judge Baker reasoned that such a requirement would

be too burdensome and impractical.  This Court agrees with Judge

Baker's conclusions.  In any event, the answer to the interrogatory is

obvious: Defendants do not conduct individual assessments of residents

when instituting facility-wide restrictions on movies and games.

E.  Interrogatory 7: How can you justify restricting these movies and games as an exercise of your professional judgment when no respected research or publications support those restrictions?

This interrogatory is argumentative.  Discovery is not the time for arguing one's case.

F.  Interrogatory 13: What "personal property contracts" are used for gaming and DVD players?  Why do those contracts fail to mention the purported harmful stimuli in games and movies?  How are constantly changing rules at the facility therapeutic for the residents?

Again, Plaintiffs are arguing their case.  Additionally, as discussed above, the personal property contracts are not relevant to this case, nor would they lead to relevant evidence.

G: Interrogatory 14: It is not clear what this interrogatory asks. Plaintiffs appear to be asking why residents who consent to treatment are allowed to view movies and games on the restricted list, given that the media on the restricted list has been deemed counter-therapeutic.

Defendants' response is also unclear.  They contend that "the

9

subject limitation as described above was not solely approved for just group members." The Court does not understand what this response means. Accordingly, Defendants will be directed to supplement this response.

## II. Motion to Compel "Full Disclosure" from Defendant Jumper

In <u>Smego</u>, Defendant Jumper submitted an affidavit explaining the reason for the blanket ban. Judge Baker relied heavily on this affidavit to grant Defendants summary judgment. Jumper averred in that affidavit that he had researched other states' policies on media restrictions for sexually violent persons, and that many states have more restrictive policies than the restrictions imposed at Rushville Treatment and Detention Facility.

Plaintiffs in this case seek copies of the research Jumper conducted to arrive at this conclusion, including the name of persons he contacted and the information he received or discovered. However, Judge Baker's order specifically renounced any reliance on Jumper's averred research because Plaintiffs in that case had not had an opportunity to probe the

10

reliability of Jumper's research.  Judge Baker concluded that, even without considering other states' approaches, Defendant Jumper had demonstrated a rational connection between the ban and legitimate interests in rehabilitation and the efficient use of limited staff resources. The information is therefore not relevant, nor is it likely to lead to relevant information.  Accordingly, this motion to compel will be denied.

IT IS THEREFORE ORDERED:

1) Plaintiffs' motion to compel responses by Defendants Wilczynski, Oberhausen, Olt, and Groot is granted in part and denied in part (d/e 71).  By January 31, 2012, these Defendants are directed to supplement their responses to interrogatories 4 and 14, in accordance with this opinion.

2) Plaintiffs' motion to compel information from Defendant Jumper is denied (d/e 82).

3) In their motion for summary judgment, Defendants are directed to address the banned list of movies and games, as well as the prior blanket ban.

11

ENTERED:        December 27, 2011

FOR THE COURT:

                        s/Sue E. Myerscough
                        _____
                        SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE