IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL LEWIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 10-CV-3163 |
| ) | |
| LARRY PHILLIPS, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

Fifteen pro se Plaintiffs pursue First Amendment claims arising from restrictions on their access to movies, video games, video gaming systems and other electronic devices in the Rushville Treatment and Detention Center. A retaliation claim is also pursued based on Plaintiffs' allegations that these restrictions were put in place in order to retaliate against them for lawsuits.

On March 28, 2014, the Court granted summary judgment to Defendants on the claims arising from the restrictions on movies and games, finding that those restrictions were rationally related to legitimate safety, therapeutic, and staffing concerns. The Court also concluded that no rational jury could find that those

restrictions were implemented to retaliate for Plaintiffs' exercise of their First Amendment rights.

The Court left pending Plaintiffs' challenge to the restrictions on electronic devices, including video gaming systems, to afford Plaintiffs more time for discovery to oppose the supplemental information the Court had ordered from Defendants. Plaintiffs were given an opportunity to file a supplemental response if they wished (3/28/14 order), but they have not done so. Plaintiff Brown moves for another extension of discovery on the grounds that Plaintiff Michael Lewis has been appointed a guardian of his person, but the Court cannot indefinitely delay a decision, and the guardian has not sought an extension on behalf of Mr. Lewis. In any event, that Mr. Lewis has been appointed a guardian does not affect the other Plaintiffs' ability to proceed. The Court will rely on Plaintiffs' original response, and Plaintiffs' relevant arguments in their pleadings filed on November 6, 2013 (d/e's 209, 210) and November 12, 2013 (d/e 212).

At issue is a prohibition on all video gaming systems except for any Playstation 2 under warranty, and a prohibition on any electronic device with a hard drive or internet capability. (Scott Aff.

para. 16.) Gaming systems possessed when these prohibitions were implemented are grandfathered in, provided the resident behaves. A Playstation 2 under warranty may be sent out for repairs, but once it breaks and is no longer under warranty, it cannot be replaced. (2013 Resident Handbook, p. 65.)

The Court recognized in its prior order that video games are forms of expression protected by the First Amendment. *See* <u>Brown v. Entertainment Merchants Ass'n</u>, 131 S.Ct. 2729, 2733 (2011)("video games qualify for First Amendment protection"). The gaming devices are necessary in order to engage in that expression, so a restriction on gaming devices also impinges on First Amendment rights. Electronics with hard drives and internet capability also touch on the First Amendment right to create and receive expression.

For the reasons already explained in the Court's 3/28/14 order, the Supreme Court's <u>Turner</u> test applies to determine the constitutionality of the prohibitions on electronics: Are the prohibitions reasonably related to legitimate government interests? <u>Turner v. Safely</u>, 482 U.S. 78, 89 (1987). Encompassed in that analysis is the deference owed to Defendants in operating the

facility. *See* Beard v. Banks, 548 U.S. 521, 529 (2006)("[W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities.")

Defendants assert that the prohibitions were implemented to address valid security, therapeutic, and staffing concerns. Thielman v. Leean, 282 F.3d 478, 483 (7th Cir. 2002)("facilities dealing with those who have been involuntarily committed for sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high."). They argue that hard drives and internet connectivity would enable residents to obtain, store, trade, and sell contraband such as pornography and other counter-therapeutic materials, and to communicate surreptitiously and improperly with other residents. According to Defendants, gaming systems made after 2005 are akin to personal computers, able to connect to the internet with little or no additional equipment, able to store information, and able to communicate with other electronic devices.

Plaintiffs do not dispute that security, therapeutic and staffing concerns are legitimate government concerns, nor do they dispute that allowing them to access the internet would present those concerns. Plaintiffs primarily argue impossibility—that they cannot use the gaming systems to access the internet or to communicate with other residents as Defendants fear. They contend that the gaming systems provide no internet access because residents have no access to an internet connection or to the equipment necessary to gain that access. Further, Plaintiffs contend that hiding illicit data on the systems is not possible because the hard drive is easily searched. They also argue that they would not be able to communicate surreptitiously because headphones are not allowed.

Defendants do not need to demonstrate that their fears will inevitably be realized if gaming systems are allowed. They need only establish a "valid, rational connection" between the restriction and Defendants' legitimate goals. The logical connection cannot be "so remote as to render the policy arbitrary or irrational." Turner v. Safely, 482 U.S. 78, 90 (1987); Singer v. Raemisch 593 F.3d 529, 537 (7th Cir. 2010)(Defendants need only "'demonstrate that [they]

could rationally have seen a connection.'")(*quoting* Wolf v. Ashcroft, 297 F.3d 305, 308 (3d Cir. 2002).

Defendants have met their burden. The gaming systems can store and reproduce information, communicate with other gaming systems, and access the internet by connecting through Wi-Fi radio devices, wired Ethernet ports, or Universal Serial Bus ports that are incorporated in the gaming device. (White Aff. para. 7.) Two residents have already accomplished this, having accessed the internet by using a gaming system to connect to a nearby private home's unsecured wireless connection. (White Aff. para. 9). Rushville employees had to personally visit those living in the private home in order to secure the home's wireless connection.

According to Defendants, "the likelihood of a new, unsecured wireless connection capable of providing internet access located near the facility remains a constant concern." (While Aff. para. 9.) A resident could also establish an internet connection by persuading a friend or family member to place an unsecured wireless networking device near the facility or "simply park his or her vehicle in the parking lot and broadcast[] a wireless signal." (Clayton Aff. para. 10.) Other alternatives include smuggling in the

small part or parts needed to establish an internet connection or fashioning a cable on one's own with scavenged parts. (Clayton Aff. paras. 8-9; White Aff. paras. 10-11.) "[A]t least one resident in the facility has demonstrated himself resourceful enough to create a personal computer with his gaming system and other electronic devices in his room through the use of smuggled parts and items scavenged from around the facility." (White Aff. para. 14.) The small parts needed to establish an internet connection could be easily disguised as a USB flash storage device (which residents are permitted to have to store legal and education materials). The disguise would make it hard to find the contraband— security staff would have to test each storage device separately. (White Aff. para. 11.) Further, if even one gaming system was able to connect to the internet, other gaming systems could conceivably join in that access. (White Aff. para. 12.)

The hard drive in the gaming systems presents a security concern as well. Already, two residents were discovered to have "been using the hardware and software contained within their gaming systems to make, copy and distribute pornography to other residents within the facility. The pornography was delivered to

other residents' USB flash storage devices, a device which a resident may otherwise legitimately possess for the purpose of storing legal and educational materials." (Clayton Aff. para 12.)

In light of the above examples, Defendants' prohibition on gaming systems is clearly rationally related to legitimate, neutral government objectives of maintaining security, fostering a therapeutic environment, and efficiently allocating staff. Defendants' fears are not exaggerated nor is their response.

The second <u>Turner</u> factor--whether Plaintiffs have an alternative means of exercising their right—does weigh in favor of Plaintiffs, but that does not change the Court's conclusion. Defendants acknowledge that eventually the allowed gaming systems (Playstation 2) will break down or be confiscated for various reasons. (Clayton, para. 17.) At that point, no alternative means of playing video games will exist. But while "[t]he absence of any alternative . . . provides 'some evidence that the regulations [a]re unreasonable,' . . . it is not 'conclusive' of the reasonableness of the policy." <u>Beard</u>, 548 U.S. at 532 (upholding ban on newspapers, magazines, and photographs in restrictive prison unit, even though prisoners in that unit had no alternative means of exercising

right)(quoted cite omitted).  Defendants are not required to "sacrifice legitimate penological objectives" solely because no alternative means exists to play video games.  *See* O'Lone v. Estate of Shabass, 482 U.S. 342, 352 (1987)(inability of prisoners to exercise religion in specific way did not render prison regulation unreasonable). Plaintiffs have many other recreational opportunities---television, radio, movies, books, and gym.

The remaining Turner factors weigh in Defendants' favor. Accommodating Plaintiffs' desires for video gaming systems would negatively impact the security of the Detention Center and the efficient use of staff—the third Turner factor to consider.  Security staff would have to continually check the hard drive of each gaming system for illicit material, conduct exhaustive searches for very small computer parts and cables, and constantly monitor whether any unsecured wireless networks were in the area.  Even if the hard drives were removed, the internet capabilities would remain.  (White Aff., para. 14.)  As to the fourth and final Turner factor, Plaintiffs do not identify any ready alternative that would address Defendants' concerns while still allowing the gaming systems, nor does the Court see any ready alternative.  *See* Overton v. Bazzetta, 539 U.S.

126, 136 (2003)( "*Turner* does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal.).

In short, Defendants' restrictions on electronics is reasonably related to legitimate government interests. Therefore, summary judgment is mandated for Defendants on the electronics claim.

Summary judgment is also mandated for Defendants on the retaliation claim. A rational juror could not conclude that the restrictions were implemented to retaliate against residents for exercising their First Amendment rights. In any event, as the Court concluded in its prior order, the retaliation claim cannot succeed as a matter of law because the restrictions are reasonably related to legitimate government interests. *See* Lingle v. Kibby, 2013 WL 1558545 (7th Cir. 2013)("We have observed, albeit in dicta, that the question whether a ban on speech is rationally related to legitimate institutional goals is an objective inquiry; the subjective motives of those who implement the ban should not matter.")(*citing* Hammer v. Ashcroft, 570 F.3d 798, 802–03 (7th Cir.2009) (en banc).

**IT IS THEREFORE ORDERED:**

1. Defendant Brown's motions for extensions are denied (235, 236).

2. The motions to voluntarily dismiss by Plaintiffs Diaz, Barrett, and Phillips are denied (231, 232, 233.) As the Court ruled in its 6/6/14 text order, Defendants are entitled to ruling on the merits of Plaintiffs' claims.

3. Plaintiffs' motion for leave to file a supplemental summary judgment motion (157) was granted on 5/16/13 to the extent Plaintiffs sought to have the motion considered. Motion 157 was implicitly denied in the Court's 3/28/14 order as to the claims regarding video games and movies. This order denies motion 157 as to the remainder of Plaintiff's claims. The clerk is directed to terminate motion 157.

4. Defendants' supplemental motions for summary judgment are granted (204, 206).[1] The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiffs. This case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

---

[1] Motion 204 does not show as pending on the docket, but the motion in fact is pending.

5. Any Plaintiff wishing to appeal this judgment must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c).

ENTER: September 17, 2014

FOR THE COURT:

                                           **s/Sue E. Myerscough**
                                           SUE E. MYERSCOUGH
                                   UNITED STATES DISTRICT JUDGE